**AMERICAN INSURANCE ASSOCIATION and Alliance of American Insurers, Plaintiffs,**

**v.**

**H. Joe SELBY, Office of the Comptroller of the Currency, and United States of America, Defendants,**

**Citibank, N.A., Defendant-Intervenor.**

**Civ. A. No. 85–1489.**

United States District Court, District of Columbia.

Dec. 6, 1985.

---

**4.** The prorated amounts were calculated as follows:

$$\frac{\$\ 24,911.57\ \text{(Tekair's Judgment)}}{\$136,912.25\ \text{(Total Judgment)}} = .18 \qquad \frac{\$112,000.68\ \text{(Ronair's Judgment)}}{\$136,912.25\ \text{(Total Judgment)}} = .82$$

Timothy C. Russell, Martin E. Lybecker, Alan G. Priest, Drinker, Biddle & Reath, Washington, D.C., for plaintiffs.

Sandra M. Schraibman, Hermes Fernandez, U.S. Dept. of Justice, Washington, D.C., for defendants.

Arnold M. Lerman, Michael S. Helfer, Kerry W. Kircher, Wilmer, Cutler & Pickering, Washington, D.C., for defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs American Insurance Association (AIA) and Alliance of American Insurers (AAI or Alliance), national trade associations representing companies engaged in property and casualty insurance, brought suit against the Office of the Comptroller of the Currency, the Acting Comptroller, and the United States ("Comptroller"), challenging a decision by the Comptroller allowing Citibank, N.A. ("Citibank") to offer municipal bond insurance through an operating subsidiary. Defendants and defendant-intervenor Citibank (collectively referred to hereinafter as "defendants") filed motions to dismiss for lack of standing. On September 17, 1985, the Court stayed further consideration of plaintiffs' motion for summary judgment pending a determination of their standing to maintain the suit. For the reasons set forth below, the Court concludes that plaintiff AIA possesses the requisite "stake in the outcome of the controversy" to establish standing, that defendants' motions to dismiss should therefore be denied, and that the stay issued on September 17 should be lifted.

### I. *Background*

In a ruling issued May 2, 1985, the Comptroller approved Citibank's proposal to establish an operating subsidiary to issue standby credits for municipal bonds in the form of municipal bond insurance. That subsidiary opened for business on July 1, 1985. Plaintiffs filed suit in this Court for declaratory and injunctive relief on May 9, claiming that the Comptroller's approval

was arbitrary and capricious, and would result in violations of the Bank Holding Company Act, 12 U.S.C. §§ 1841 *et seq.*, the National Bank Act, 12 U.S.C. § 24, and the McFadden Act, 12 U.S.C. §§ 36 and 81.

Plaintiff AIA consists of 174 member companies. Affidavit of William L. Martin at ¶ 2, Appended to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motions to Dismiss ("Plaintiffs' Opposition"). Of these, three members—the Travelers Indemnity Company, the Aetna Casualty and Surety Company, and Aetna Insurance Company—participate in a consortium called the Municipal Bond Insurance Association, which underwrites and sells municipal bond insurance. A fourth member, the United States Fidelity and Guaranty Company, engages directly in the municipal bond insurance business, independent of any group or consortium. *Id.* at ¶ 8. Defendants maintain that with only four out of a total of 174 members engaged in municipal bond insurance, plaintiff AIA lacks any meaningful relationship to the municipal bond insurance market, and that the interests it seeks to protect or advance in this lawsuit are not germane to its purposes. They insist, therefore, that plaintiff lacks standing to bring this action.

### II. *Discussion*

It is well settled that "an association may have standing solely as the representative of its members." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). To establish such "associational" or "representational" standing, the association must demonstrate that:

(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm.,* 432 U.S. 333, 343, 97 S.Ct.

2434, 2441, 53 L.Ed.2d 383 (1977); *Committee for Auto Responsibility v. Solomon*, 603 F.2d 992, 998 n. 13 (D.C.Cir.1979), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 599 (1980). A plaintiff need not suffer a substantial injury in order to demonstrate standing; an identifiable trifle will suffice. *United States v. Students Challenging Regulatory Action Procedure*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973); *Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708, 714 (D.C.Cir.1977). The injury, however, must be concrete, palpable and immediate, not conjectural or hypothetical. *City of Los Angeles v. Lyons*, U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). In the present case, four of plaintiff AIA's members are engaged in the municipal bond insurance business, and thus, as a result of the Comptroller's May 2 ruling, will suffer a competitive injury that would clearly confer standing upon them had they brought suit in their own right. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Plaintiff AIA therefore appears to have satisfied the first prong of the associational standing inquiry. Plaintiff AAI, on the other hand, stands on a different footing. Like AIA, the Alliance has as its general goal the advancement of the interests of property and casualty insurers. Affidavit of Fred W. Beck at ¶ 5, Appended to Plaintiffs' Opposition. None of its 175 member companies, however, actually engage in the municipal bond insurance business, and thus none of its members have suffered any injury in fact. Plaintiff AAI, therefore, cannot clear the first hurdle necessary to demonstrate representational standing.[1]

[5] Defendants do not seriously dispute plaintiff AIA's showing of injury in fact, but rather "respectfully suggest that so few of plaintiff AIA's members are involved in the municipal bond insurance market that AIA cannot establish standing on that basis." Memorandum of Points and Authorities in Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Defendants' Reply") at 6. Defendants, however, can cite no case in which a federal court has denied standing to an association simply because too few of the association's constituent members have suffered injury in fact. Indeed, in *Warth v. Seldin*, the Supreme Court suggested that an association could establish standing by "alleg[ing] that its members, *or any one of them*, are suffering immediate or threatened injury...." 422 U.S. at 511, 95 S.Ct. at 2211 (emphasis supplied). Defendants rely on *American Ins. Ass'n v. Fox*, No. 85 CV 2823 (Wis.Cir.Ct. June 5, 1985), in which a Wisconsin court ruled that AIA lacked standing to challenge the state's approval of Citibank's acquisition of a Wisconsin municipal bond insurance company because less than 2% of its members sell municipal bond insurance. At 270. That decision, of course, was based on the state's law of standing, and is in no way binding on this Court. More importantly, however, the *Fox* court's approach to standing is fraught with potential pitfalls. How, for example, are courts to decide what percentage of an association's members must have standing before the association itself has standing? Defendants suggest that a threat of harm to four out of 174 association members is insufficient. Would a threat to ten members suffice, or twenty? What standards are to guide

---

1. As discussed below, property and casualty insurance is understood within the industry as a generic phrase encompassing, among other subcategories, municipal bond insurance. It may well be that some of AAI's members might in the future expand into this sub-market, or that the reasoning of the Comptroller's decision could have ramifications that might affect AAI's members in the future. These threats of harm, however, are not sufficiently immediate or palpable to sustain a finding of standing. Similar-

ly, AAI's claim that "it is reasonably probable" that it will have to expend funds to lobby Congress to correct the Comptroller's allegedly improper ruling is an insufficient harm to warrant a finding that the Alliance itself has standing, independent of its members. Given the AAI's interest in this litigation, however, the Court grants the Alliance leave to participate as *amicus curiae*, provided it advises the Court within seven days of the issuance of this Opinion and Order that it wishes to so participate.

courts as they attempt to distinguish between fractional shares of association memberships? And if courts are to consider the percentage of members affected, perhaps they should also consider the relative influence and importance of the affected members. It would be perfectly consistent with defendants' theory of standing to find that an injury to four of the AIA's largest and most influential members confers standing on the association, but that a similar injury to four minor insurance companies does not. This Court declines to take the first step down such a slippery slope, especially in view of the Supreme Court's suggestion that injury to a single member is an adequate basis upon which to rest a finding of standing.

■ Defendants next argue that even if plaintiff AIA has satisfied the first requirement of associational standing, the interests of municipal bond insurers are simply not germane to AIA's purposes. Defendants contend that AIA's purpose is to represent the interests of property and casualty insurers, not municipal bond insurers; that the association has never before offered a single service to municipal bond insurers; and that, were it not for the purely fortuitous circumstance that four of AIA's members happen to sell municipal bond insurance, plaintiff would have no connection whatever to that insurance market. AIA, on the other hand, maintains that "property and casualty insurance" is simply a generic phrase that is understood in industry parlance to encompass a wide variety of insurance specialties, including credit insurance, financial guaranty insurance and municipal bond insurance. Affidavit of William L. Martin at ¶ 3, Appended to Plaintiffs' Opposition. Under Wisconsin law, for example, municipal bond insurance is defined as a form of "surety insurance," which is in turn defined as a form of "property and casualty insurance." *See* Wisconsin Administrative Code, Insurance, §§ 3.08(3)(e) and 6.75(2)(g). The interests of municipal bond insurers, therefore, are clearly embraced by AIA's stated purpose of "promot[ing] the economic, legislative and public standing of its participating property and casualty insurers and the insurance industry." Article Fourth, ¶ 2, AIA Certificate of Incorporation, attached as Exhibit 6 to Defendants' Reply.

■ It is true, as defendants note, that an "association's representative capacity will seldom, if ever, extend to all of its members' interests." *Boyce v. Rizzo*, 78 F.R.D. 698, 704 (E.D.Pa.1978). Defendants, however, advance an excessively restrictive view of germaneness in this case. An association's litigation interests must be truly unrelated to its organizational objectives before a court will declare that those interests are not germane. Thus, for example, in *Medical Ass'n of the State of Alabama v. Schweiker*, 554 F.Supp. 955 (M.D.Ala.), *aff'd*, 714 F.2d 107 (11th Cir. 1983), the district court found that the Alabama Medical Association could not represent its members as taxpayers, since the injury the physician members had suffered as taxpayers was unrelated to the reasons they had joined together in a medical association. *Id.* at 965. Similarly, in *Boyce v. Rizzo*, the court offered the example of a local PTA, which, as an association, could not be expected "to represent the members in matters not relating to education." 78 F.R.D. at 704. By contrast, plaintiff AIA seeks here to represent its members in matters relating to property and casualty insurance. The injury that four of its members have suffered clearly "has some reasonable connection with the reasons the members joined the organization and with the objectives of the organization." *Medical Ass'n of the State of Alabama*, 554 F.Supp. at 965. Indeed, the interests of municipal bond insurers, as a sub-group of property and casualty insurers, are certainly comprehended by AIA's broad goals of advancing the economic and legislative interests of property and casualty insurers generally.

At bottom, defendants' position is that, since so few of AIA's members are involved in the municipal bond insurance market, the interests of those members are simply not important enough to the AIA as

a whole to be germane to the organization. This theory of germaneness suffers the same deficiencies as defendants' numerical approach to determining standing. It would be presumptuous, to say the least, for this Court to inform plaintiff AIA that the interests of certain of its members, although falling squarely within the association's stated goals, are simply not weighty enough to be germane. The Court declines to undertake a standardless inquiry into the relative importance of AIA's varied interests, particularly in the absence of any authority requiring such a determination.

■ Having concluded that plaintiff AIA's members would otherwise have standing to sue in their own right and that the interests plaintiff seeks to protect in this suit are germane to its purposes, the third requirement for representational standing presents no difficulty. Defendants do not suggest that the claim asserted by AIA or the relief requested require the participation of individual members in the lawsuit, and there is no reason to believe that such participation is necessary. The Court therefore concludes that plaintiff has satisfied the requisites of representational standing.

For all the foregoing reasons, the Court finds that plaintiff AIA has standing to maintain the action and that defendants' motion to dismiss be and it hereby is denied. The stay of proceedings issued on September 17, 1985, is hereby lifted. Defendants will have until thirty (30) days from the date this Order is issued within which to file their oppositions to plaintiff's motion for summary judgment; and plaintiff shall have an additional seven (7) days within which to reply to defendants' oppositions.

The Court further finds that plaintiff AAI lacks standing to maintain this action. The Court, however, grants the Alliance leave to participate in this litigation as *amicus curiae*, provided it advises the Court of its intention to do so within seven days of the issuance of this Opinion and Order.

SO ORDERED.